

_/s/ Lori Simpson_
**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   19-15518-LSS |
| Aletha K. Barsir | * | Chapter   7 |
| Debtor | * | |

\* * * * * * * * * * * * *

### MEMORANDUM OPINION

Before the Court is the Debtor's Objection to Manor Care of Potomac MD, LLC's Proof of Claim [Dkt. No. 38] (the "Claim Objection") and the Opposition and Partial Objection to Exemption [Dkt. No. 46], filed by Manor Care of Potomac MD, LLC ("Manor Care"). This matter came before the Court for a hearing on August 6, 2019. At the conclusion of the hearing, the Court announced that it would take ruling on the Claim Objection and Opposition under advisement and would deny Manor Care's Partial Objection to Exemption with leave to amend based on Manor Care's failure to comply with Local Bankruptcy Rule 4003-1.

This Court has jurisdiction to hear this matter, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52, made applicable

to this contested matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. To the extent appropriate, the following findings of fact shall be deemed conclusions of law and *vice versa*.

I.      **Background.**

This matter arises from Debtor's receipt of inpatient post-stroke care from Manor Care between the dates of January 11, 2018 and March 23, 2018. During that time, Debtor incurred a bill of $30,847.67 for treatment, services, room, and board.[1] In connection with Debtor's admission to Manor Care, she executed a Resident Admission Contract (the "Admission Contract").[2] The Admission Contract contains the following provision:

> If you (or your agent) do not pay the amount you owe us after receiving Facility bills, and we hire a collection agency or attorney, you agree to pay for their fees, expenses and costs.[3]

Prior to her admission to Manor Care, Debtor submitted an application to the Maryland Medical Assistance Program (the "MMAP") seeking financial assistance to pay for the necessary medical care. On July 26, 2018, the MMAP issued to Debtor a Notice of Ineligibility Due to Excess Resources.[4] The MMAP informed Debtor that she was ineligible for medical assistance under that program because her "resources exceed the maximum allowable amount of $2,500.00."[5] The MMAP identified several sources funds available for Debtor to pay the Manor Care bill, including four bank accounts of nominal value and a 403(b) account through Transamerica worth approximately $275,000.00 (the "Transamerica Account").[6]

---

[1] Opposition Exhibit 9.
[2] Opposition Exhibit 8.
[3] Opposition Exhibit 8.
[4] Opposition Exhibit 1.
[5] *Id.*
[6] *Id.*

On August 17, 2018, Manor Care filed suit against Debtor in the Circuit Court for Montgomery County, Maryland (the "State Court Action").  Manor Care asserted two causes of action; breach of contract and a request for injunctive relief directing Debtor to pay Manor Care from her available funds pursuant to MD Code, Health – General, § 19-344(c)(4)(vi) ("Subparagraph (c)(4)(vi)").  In response, Debtor filed a complaint with the State of Maryland, Office of the Attorney General seeking payment from her insurance company.[7]  Manor Care agreed to stay the State Court Action pending the outcome of the proceedings before the Attorney General.[8]  On December 3, 2018, the Attorney General informed Debtor that her insurance company again denied reimbursement of the amount owed to Manor Care.[9]  Thereafter, the State Court Action proceeded through discovery.

On April 23, 2019, Debtor filed her Voluntary Chapter 7 Petition.[10]  As the State Court Action had not concluded by the petition date, it was again stayed.  The following day, Manor Care filed its proof of claim, asserting a secured claim of $42,356.17, including $30,847.67 for services rendered and $11,508.50 in attorney's fees incurred between the dates of June 10, 2018 and April 14, 2019[11].  Manor Care represented that it held a security interest in the Transamerica Account pursuant to Subparagraph (c)(4)(vi).  On July 2, 2019, Manor Care filed an amended proof of claim, increasing the amount of its claim to $53,864.67.[12]  The claim increase was based on an additional $11,559.61 in attorney's fees incurred between April 15, 2019 and June 28, 2019.

---

[7] Opposition Exhibit 2.
[8] Opposition Exhibit 3.
[9] Opposition Exhibit 6.
[10] Dkt. No. 1.
[11] Claim No. 1-1.
[12] Claim No. 1-2.

On June 19, 2019, Debtor filed the Claim Objection. Debtor asserts that Manor Care's claim is not secured and that the attorney's fees portion of the claim should be reduced by $1,785.00. Debtor asserts that the time spent by Manor Care's counsel in communication with the Attorney General's Office and in responding to Debtor's medical records requests was not part of collection activities and therefore should be disallowed. Debtor does not dispute the portion of the claim attributable to services provided by Manor Care and has not filed an objection to the additional attorney's fees listed in the amended proof of claim.

On July 2, 2019, Manor Care filed its Opposition to the Claim Objection. Manor Care argues that its claim is secured pursuant to Subparagraph (c)(4)(vi). Manor Care further argues that all attorney's fees listed in its proof of claim were incurred in the collection of Debtor's debt.

**II.     Discussion.**

  *A.     Manor Care's Claim is Unsecured.*

Debtor asserts that Manor Care's claim should be treated as unsecured for all purposes in this bankruptcy case. Debtor cites 11 U.S.C. § 502, however § 502 addresses only allowance or disallowance of a claim, not its status as secured or unsecured. This portion of the Claim Objection should have been brought as a motion for determination of secured status pursuant to 11 U.S.C. § 506(a) and it is appropriate for the Court to consider it as such.[13]

Section 506(a) provides, in relevant part, that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the

---

[13] The Court has determined that it is appropriate to consider Debtor's request that the Court hold that Manor Care's claim is unsecured as a motion for determination of secured status under 11 U.S.C. § 506(a) for two reasons. First, the evidence and arguments presented by both parties addressed such request without a reservation of rights. Second, a motion for determination of secured status under 11 U.S.C. §506(a) is the only potentially applicable exception to Fed. R. Bankr. P. 7001's requirement that a proceeding to determine the validity of a lien must ordinarily be brought by adversary proceeding.

value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a).  For the purposes of the Bankruptcy Code, the term "claim" is defined as a "right to payment."  11 U.S.C. § 101(5)(A).  Additionally, under the Bankruptcy Code, "[t]he term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation."  11 U.S.C. § 101(37).  Whether a creditor has "a charge against or interest in property to secure payment of a debt" is generally governed by state law.  *In re Price*, 562 F.3d 618, 624 (4th Cir. 2009) ("[W]hen determining the substance of property rights and security interests in bankruptcy, 'the basic federal rule is that state law governs.'" (*quoting Butner v. United States*, 440 U.S. 48, 57 (1979))).

Manor Care argues that it has an interest in the Transamerica Account to secure payment of its claim pursuant to Subparagraph (c)(4)(vi).  That provision provides:

> If a resident or agent of the resident fails to pay for the cost of the resident's care from funds that the medical assistance program has determined to be available to pay for that care, the facility may, without requesting the appointment of a guardian, petition the appropriate circuit court for an order directing the resident or agent of the resident to pay the facility from the funds determined by the medical assistance program to be available.

MD Code, Health – General, § 19-344(c)(4)(vi).  There is no dispute that Debtor was a resident and Manor Care is a facility as those terms are used in Subparagraph (c)(4)(vi).  There is also no dispute that Debtor failed to pay for her care and the Transamerica Account is a fund that the Medical Assistance Program determined to be available to pay Manor Care's claim.  The parties dispute, however, whether Subparagraph (c)(4)(vi) provides for the creation of a lien and whether Manor Care fulfilled all requirements to perfect a lien in the Transamerica Account.

Unfortunately, the parties did not provide, and the Court has not found, any case law or secondary sources interpreting Subparagraph (c)(4)(vi).  Under such circumstances, it is the duty of this Court to attempt to predict how the Maryland Court of Appeals would rule on this issue.

5

*McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996).  Maryland courts approach statutory interpretation as follows:

> When conducting a statutory construction analysis, we begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. When the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia. Moreover, after determining a statute is ambiguous, we consider the common meaning and effect of statutory language in light of the objective and purposes of the statute and Legislative intent.

*In re S.K.*, 2019 WL 4051636, at *8–9 (Md. Aug. 28, 2019) (internal quotations and citations removed) (*quoting Blackstone v. Sharma*, 191 A.3d 1188 (Md. 2018)).

In the interest of judicial restraint, the Court will begin its analysis by assuming *arguendo* that Subparagraph (c)(4)(vi) provides for the creation of a lien.  Accordingly, the Court must determine what pre-conditions that provision establishes for the creation of such lien and whether the facts in this case lead the Court to conclude that Manor Care has a lien in the Transamerica Account.  Subparagraph (c)(4)(vi) provides: "the facility may . . . petition the appropriate circuit court for an order directing the resident or agent of the resident to pay the facility from the funds determined by the medical assistance program to be available." MD Code, Health – General, § 19-344(c)(4)(vi).  The plain language of Subparagraph (c)(4)(vi) requires the entry of an order by the appropriate circuit court to create an interest in the available funds. Otherwise, the language permitting the facility to seek such an order would be superfluous and Maryland's cannons of statutory interpretation forbid such an interpretation.  *Reier v. State Dept. of Assessments and Taxn.*, 915 A.2d 970, 986 (Md. 2007) ("Our canons of statutory interpretation, however, forbid us to 'construe a statute ... so that [a] word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.'" (*quoting Blake v. State*,

6

909 A.2d 1020, 1026 (Md. 2006)). Further, if the obligation to pay from available funds pre-exists the entry of the order, the order itself would be meaningless.

This interpretation is consistent with purpose and authority of the Maryland Medical Assistance Program. *See* Md. Health-Gen. Code Ann. § 15-103 (setting forth the duties of Maryland's Medical Assistance Program). The Maryland legislature established the Maryland Medical Assistance Program following the enactment of Medicaid Act in 1965. *Jackson v. Millstone*, 801 A.2d 1034, 1036 (Md. 2002) (*citing* 42 U.S.C. § 1396 et seq.; 42 C.F.R. §§ 430–456). The Medicaid Act "established a medical assistance program, which is a jointly funded collaboration between the states and the federal government" in furtherance of the desire "to enable states, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services." *Id.* at 1036–37. Generally speaking, the Maryland Medical Assistance Program "is responsible for the approval or denial of applications for preauthorization for payment." *Id.* at 1307. The Maryland Medical Assistance Program's review of an applicant's assets is in furtherance of its duty to determine eligibility for benefits under the program. The Court is not aware of any statute, regulation, or case law that grants the Maryland Medical Assistance Program the authority to create liens or otherwise encumber the assets of an applicant for benefits under that program.

Manor Care likens Subparagraph (c)(4)(vi)'s provision for the opportunity to seek a court order directing payment from available funds to a provision in Maryland Transportation Code § 13-202(b)(2), which provides that the security interest in a vehicle "is perfected at the time of the delivery [of the application for certificate of title containing the required information regarding the security interest] and payment [to the Motor Vehicle Administration]." Manor Care also likens Subparagraph (c)(4)(iv) to a *lis pendens*. Pursuant to MD Rule 12-102(b), which provides

7

that "the filing of the complaint is constructive notice of the *lis pendens* as to real property in the county in which the complaint is filed." However, these provisions explicitly provide for the perfection of a security interest or *lis pendens* upon filing. Subparagraph (c)(4)(iv) does not so provide. Instead, it provides a procedure for seeking a court order. Further, those statutes are concerned with perfection and notice to third parties of previously existing interests in property. Even assuming *arguendo* that Subparagraph (c)(4)(iv) provides for the creation of an interest in the available funds, there is no indication therein that the facility has any interest in the available funds prior to the entry of the court order provided for thereunder.

Here, Manor Care petitioned the appropriate circuit court for an order directing Debtor to pay Manor Care from the Transamerica Account. However, the circuit court never entered such an order. Under these facts, Manor Care does not have a lien against the Transamerica Account.

### B. All Legal Fees Included in Manor Care's Proof of Claim are Allowed.

Debtor asks the Court to disallow the portion of Manor Care's claim for attorney's fees. Debtor properly made this request for relief under 11 U.S.C. § 502(b). Specifically, Section 502(b)(1) provides that a claim should disallowed to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Debtor asserts that $1,785.00 of Manor Care's claimed attorney fees should be disallowed because they were incurred in connection with the proceedings before the Attorney General's Office. Debtor argues that the proceedings before the Attorney General's Office were not collection activities. Debtor does not assert that Manor Care's attorney's fees were unreasonable in time or amount.

Under Maryland law, parties are generally responsible for their own attorney's fees unless a statute, rule, or contract between parties provides otherwise. *Bausch & Lomb Inc. v.*

*Utica Mut. Ins. Co.*, 735 A.2d 1081, 1094 (Md. 1999).  Here, the Admission Contract provided that Debtor must pay for Manor Care's attorney's fees if she failed to pay a bill after receipt thereof and Manor Care hired an attorney to collect the unpaid debt. The attorney's fees provision is not limited to fees incurred in prosecution of a court action to collect the debt from Debtor.  A straightforward reading of the Admission Contract's attorney's fees provision reveals that it was intended to include all attorney's fee incurred in pursuit of collection on a bill that Debtor failed to pay.  Applying the plain language of the provision as written is consistent with Maryland law. *See McLaughlin v. Huhra Homes, LLC*, 2019 WL 2763144, at *11 (Md. Spec. App. July 1, 2019).  Further, the Court finds and concludes that Manor Care's attorney's fees incurred in connection with the proceedings before the Attorney General's Office were related to the collection of the debt.  As such, the entire attorney's fees portion of Manor Care's claim will be allowed.

**III.**     **Conclusion.**

Based on the foregoing, Manor Care's claim shall be allowed in its entirety as an unsecured claim.  Further, Debtor's objection to a portion of Manor Care's claimed attorney's fees will be overruled.  The Court will enter an order consistent with this Memorandum Opinion.

cc:     Debtor
        Debtor's Counsel
        Manor Care
        Manor Care's Counsel

**END OF ORDER**