# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **ALETHA K. BARSIR,** | * |
| Appellant, | * |
| v. | Case No.: GJH-19-3493 |
| | * |
| **MANOR CARE OF POTOMAC MD, LLC,** | |
| | * |
| Appellee. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Appellant Aletha K. Barsir, the Debtor in the underlying bankruptcy case (the "Debtor"), appeals the December 3, 2019 Order of the Bankruptcy Court sustaining the partial objection to the Debtor's claim of exempt property filed by Appellee Manor Care of Potomac MD, LLC (the "Creditor"), a healthcare facility that had provided the Debtor with rehabilitative inpatient care after she suffered a stroke.[1] ECF No. 1. A hearing is not necessary to resolve the present appeal. *See* Fed. R. Bankr. P. 8013(c); *see also* Loc. R. 105.6 (D. Md. 2018). For the following reasons, the Court affirms the Bankruptcy Court's Order sustaining the Creditor's partial objection.

---

[1] In addition to the appeal, the Creditor's Motion to Dismiss Appeal, ECF No. 6, and the Debtor's Motion to File Appendix Out of Time, ECF No. 13, are pending before the Court. The Motion to Dismiss seeks to dismiss the appeal because the Debtor's brief was untimely filed. *See* ECF No. 6. The Debtor's brief was originally due on January 27, 2020, ECF No. 4, but a day after that deadline, on January 28, 2020, the Debtor filed a Motion for Extension of Time, ECF No. 5. The Court granted that Motion on February 5, 2020, giving Debtor until February 21, 2020 to file her brief. ECF No. 9. Debtor subsequently timely filed her brief on February 21, 2020. ECF No. 11. Thus, the Motion to Dismiss Appeal is denied as moot. The Debtor's Motion to File Appendix Out of Time states that the Debtor's brief and appendix were filed on time, but that the Debtor's counsel had to refile the appendix one day after the deadline because certain information was not redacted. *See* ECF 13. This Motion is unopposed. Because the appendix was filed only one day late and the Motion is unopposed, it is granted.

I.  BACKGROUND

    A. Statutory Background

"The filing of a bankruptcy petition creates an estate comprised of all of the debtor's legal and beneficial interests in property." *In re Mueller*, 256 B.R. 445, 451 (Bankr. D. Md. 2000). The Bankruptcy Code allows an individual debtor to exempt certain property of the estate and provides an exemption schedule enumerating property that is entitled to such an exemption. *See* 11 U.S.C. §§ 522(b)(1), 522(d). The Code also allows a state to opt out of this federal exemption scheme and establish its own. *See* 11 U.S.C. § 522(b)(2). Maryland is one such state that has opted out of the federal scheme, *see* MD. CODE ANN., CTS. AND JUD. PROC. § 11-504(g), and, as a result, debtors who file bankruptcy petitions in Maryland may only claim exemptions afforded under state law.

Section 11-504(h)(1) of the Courts and Judicial Proceedings Article of the Maryland Code (the "Exemption Provision") provides that "any money or other assets payable to a participant or beneficiary from, or any interests of any participant or beneficiary in, a retirement plan qualified under § 401(a), § 403(b), § 408, § 408A, § 414(d), or § 414(e) of the United States Internal Revenue Code of 1986, as amended, or § 409 (as in effect prior to January 1984) of the United States Internal Revenue Code of 1954, as amended, shall be exempt from any and all claims of the creditors of the beneficiary or participant, other than claims by the Maryland Department of Health." MD. CODE ANN., CTS. AND JUD. PROC. § 11-504(h)(1). The Exemption Provision does not apply to "(i) [a]n alternate payee under a qualified domestic relations order, as defined in § 414(p) of the United States Internal Revenue Code of 1986, as amended; (ii) [a] retirement plan, qualified under § 401(a) of the United States Internal Revenue Code of 1986, as amended under § 408 of the United States Internal Revenue Code of 1986, as amended; or (iii)

[t]he assets of a bankruptcy case filed before January 1, 1988." MD. CODE ANN., CTS. AND JUD. PROC. § 11-504(h)(2).

Title 19 of the Health-General Article in the Maryland Code governs healthcare facilities, such as the Creditor. Section 19-344(c)(4) provides generally that the Maryland Medical Assistance Program ("MMAP") may determine whether a resident has funds available to pay for care administered by a healthcare facility. *See* MD. CODE ANN., HEALTH-GENERAL § 19-344(c)(4). Section 19-344(c)(4)(vi) (the "Payment Provision") specifically provides that "[i]f a resident or agent of the resident fails to pay for the cost of the resident's care from funds that the medical assistance program has determined to be available to pay for that care, the facility may, without requesting the appointment of a guardian, petition the appropriate circuit court for an order directing the resident or agent of the resident to pay the facility from the funds determined by the medical assistance program to be available." *Id.* § 19-344(c)(4)(vi).

### B. Factual and Procedural Background

The Debtor suffered a stroke in 2017, and she was subsequently admitted to the Creditor's facility in November 2017 for rehabilitative inpatient care. ECF No. 12 at 21–40, 125–143.[2] The Debtor incurred a bill of $30,847.67 for treatment, services, room, and board. *Id.* at 144. On January 11, 2018, the Debtor applied to the MMAP for financial assistance, but on July 26, 2018, the MMAP determined that she was ineligible because her resources exceeded the maximum allowable amount of $2,500.00. *Id.* at 42. The MMAP Notice of Ineligibility identified several sources of funds that could either be used to pay her medical bill or would need to be spent down in order to qualify for financial assistance, including two savings accounts, two

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

3

checking accounts, and a Transamerica § 403(b) retirement account (the "Transamerica Account"). *Id.* There is no dispute that the Debtor ultimately failed to pay for her care. *Id.* at 151.

On August 17, 2018, the Creditor filed suit against the Debtor in the Circuit Court for Montgomery County, alleging breach of contract based on the Debtor's failure to pay for the care provided by the Creditor's facility. *See Manor Care of Potomac MD, LLC v. Barsir*, No. 453130V (Cir. Ct. Mont. Cty.); *see also* ECF No. 11 at 39–44. Additionally, pursuant to the Payment Provision, the Creditor requested an order directing the Debtor to pay her medical bill using funds from the Transamerica Account. *See Manor Care of Potomac MD, LLC v. Barsir*, No. 453130V (Cir. Ct. Mont. Cty.); *see also* ECF No. 11 at 39–44.

On April 23, 2019, the Debtor filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland, ECF No. 12 at 17, and the state court proceeding was thereafter stayed. On April 24, 2019, the Creditor filed a Proof of Claim stating that its debt was secured against the Transamerica Account pursuant to the Payment Provision, *id.* at 18–20, and on June 4, 2019, Debtor claimed on her Amended Schedule C that that the Transamerica Account was exempt pursuant to the Exemption Provision, *id.* at 160.

On June 19, 2019, the Debtor filed an objection to the Proof of Claim on the basis that the debt was not a secured debt. *Id.* at 79–84. On October 16, 2019, the Bankruptcy Court issued a memorandum opinion and order concluding that the Creditor was unsecured as to any interest in the Transamerica Account because it had never obtained an order pursuant to the Payment Provision in order to become secured. *Id.* at 147–156.

On November 2, 2019, the Creditor filed an objection to the Debtor's claimed exemption in the Transamerica Account on the basis that the Payment Provision conflicts with the Exemption Provision. *Id.* at 157–168. On December 3, 2019, the Bankruptcy Court sustained the

4

Creditor's objection "to the extent that [the Creditor] obtains the appropriate order from the state court" (the "Bankruptcy Court's Order"). *Id.* at 219. The Bankruptcy Court concluded that the Payment Provision and Exemption Provision do conflict with each other and that the Payment Provision controls because it "is clearly the more specific statute." *Id.* at 217–218. Therefore, even though the Transamerica Account is generally exempt from the claims of the Debtor's creditors under the Exemption Provision, that exemption does not extend to the Creditor's claim under the Payment Provision in the event that the Creditor obtains the appropriate order from the state court. *Id.* at 218.

On December 5, 2019, the Debtor filed a Notice of Appeal asking this Court to reverse the Bankruptcy Court's Order. ECF No. 1. The Debtor filed her brief on February 21, 2020, ECF No. 11, and the Creditor filed its brief on March 12, 2020, ECF No. 14. The Debtor did not file a reply brief.

## II.     STANDARD OF REVIEW

The Court hears this bankruptcy appeal under 28 U.S.C. § 158(a). Parties of bankruptcy cases can appeal orders that dispose of discrete disputes within the larger case. *See Mort Ranta v. Gorman*, 721 F.3d 241, 246 (4th Cir. 2013). Bankruptcy appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to court of appeals from the district courts." 28 U.S.C. § 158(c)(2). On appeal from the Bankruptcy Court, this Court reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. *See In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001).

**III.    DISCUSSION**

The primary issue on appeal is how the Payment Provision and Exemption Provision apply to this case, and it therefore presents a matter of statutory interpretation. "When conducting a statutory construction analysis, [the Court] begins 'with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.'" *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quoting *Schreyer v. Chaplani*, 416 Md. 94, 101 (2010)). "When the 'words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia[.]'" *Id.* (quoting *State v. Bey*, 452 Md. 255, 266 (2017)).

The Court "presume[s] that the legislature intends its enactments to 'operate together as a consistent and harmonious body of law.'" *State v. Ghajari*, 346 Md. 101, 115 (1997) (quoting *State v. Harris*, 327 Md. 32, 39 (1992)). "Thus, when two statutes appear to apply to the same situation, this Court will attempt to give effect to both statutes to the extent that they are reconcilable." *Id.* "But, when there is an irreconcilable conflict between two statutory provisions, the more specific statute controls," and the "specific statute will be regarded as an exception to the general statute." *Dorsey v. State*, 185 Md. App. 82, 119 (Md. Ct. Spec. App. 2009) (internal quotation marks omitted). Maryland courts have also said that "if two statutes contain an irreconcilable conflict, the statute whose relevant substantive provisions were enacted most recently may impliedly repeal any conflicting provision of the statute," but only to the extent necessary "to gratify the legislative intent manifested in the later act." *Ghajari*, 346 Md. at 115 (internal quotation marks omitted).

Here, the Exemption Provision and the Payment Provision both apply to the situation presented in this appeal. The plain meaning of the Exemption Provision provides that the Transamerica Account is "exempt from any and all claims of" the Creditor because it is a retirement plan qualified under § 403(b) of the Internal Revenue Code. *See* MD. CODE ANN., CTS. AND JUD. PROC. § 11-504(h)(1). The plain meaning of the Payment Provision provides that the Creditor may "petition the appropriate circuit court for an order directing" the Debtor "to pay the facility from the funds" in the Transamerica Account because it was "determined by the [MMAP] to be available" to pay for the cost of the Debtor's care. *See* MD. CODE ANN., HEALTH-GENERAL § 19-344(c)(4)(vi). Thus, the Court "must attempt to give effect to both statutes to the extent that they are reconcilable" because they "appear to apply to the same situation." *See Ghajari*, 346 Md. at 115.

These provisions, however, dictate opposite outcomes. The Exemption Provision prohibits the Creditor from collecting against the Transamerica Account, but the Payment Provision provides that it may collect against the Transamerica Account.[3] Thus, these provisions present an irreconcilable conflict.

The only way to resolve this conflict is by interpreting the Payment Provision as an exception to the Exemption Provision. First, as the Bankruptcy Court correctly concluded, the Payment Provision is the more specific statute, both in language and purpose. While the Exemption Provision speaks generally about a variety of retirement accounts that are exempt from collection by all creditors, *see* MD. CODE ANN., CTS. AND JUD. PROC. § 11-504(h)(1), the

---

[3] The Debtor contends that the Payment Provision only provides an avenue for collection, but it does not itself permit collection. ECF No. 11 at 15–16. This argument is unpersuasive. By providing a means for the Creditor to obtain payment from the Transamerica Account, the underlying assumption is that obtaining payment from that Account is permitted should the appropriate circuit court grant the Creditor's request for an order pursuant to the Payment Provision.

7

Payment Provision speaks about a specific set of funds—those identified by the MMAP to be available to pay for medical costs—and a specific set of creditors—facilities that provide inpatient medical care—and it provides a specific procedure by which those specific creditors may petition the appropriate circuit court for an order allowing collection of the specific funds identified in the statute, *see* MD. CODE ANN., HEALTH-GENERAL § 19-344(c)(4)(vi). Similarly, in terms of purpose, the Exemption Provision is generally intended to "exempt[] certain rights and interests in certain retirement plans from the execution of a judgment," *see* 1988 Md. Laws 4177, while the Payment Provision has the more specific and limited purpose of "authorizing certain facilities to petition a certain court for certain orders under certain circumstances" in order "to prevent financial losses from residents or agents of residents not making payments," *see* 1995 Md. Laws 3159; ECF No. 11 at 34.[4] Thus, the Payment Provision, as the more specific statute, "controls" and "will be regarded as an exception to the general" Exemption Statute. *See Dorsey*, 185 Md. App. at 119; *see also In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016) ("A commonplace of statutory construction is that the specific governs the general.").

This conclusion is reinforced by the legislative history of the Payment Provision and the context of the statutory scheme. First, the relevant substantive provisions in the Exemption Provision were enacted in 1988, *see* 1988 Md. Laws 4178, while the relevant substantive provisions in the Payment Provision were not enacted until 1995, *see* 1995 Md. Laws 3161. Thus, the relevant provisions of the Payment Provision were enacted more recently than those in the Exemption Provision and therefore control to the extent necessary to effect legislative intent.

---

[4] Debtor states that the purpose of the Payment Provision is to protect the rights of nursing home residents. *See* ECF No. 11 at 14–15. Although this is true, it is misleading. Another stated purpose is the purpose noted by the Court, and it seems clear from the specific language of the Payment Provision, which is found within a subsection generally describing payment for care and the medical assistance program, that this particular provision is more relevant to the purpose of protecting nursing homes than the purpose of protecting residents.

8

*See Ghajari*, 346 Md. at 115. And, as the Court has explained, the Maryland legislature's stated intent in promulgating the Payment Provision was to protect facilities such as the Creditor's from financial loss by allowing them a limited procedure for collecting funds from residents who fail to pay for care. *See* 1995 Md. Laws 3159; ECF No. 11 at 34. Interpreting the Payment Provision as an exception to the Exemption Provision whereby a covered retirement account can be used to pay for medical care is the only way to effect this legislative intent.

Moreover, this interpretation is the only one that makes sense of the broader statutory scheme. Although the Debtor correctly notes that the Exemption Provision contains three enumerated exceptions, *see* MD. CODE ANN., CTS. AND JUD. PROC. § 11-504(h)(2), the statutory scheme governing the MMAP would be meaningless unless the Payment Provision were an additional exception. Maryland law permits the MMAP to determine which funds belonging to a resident are available to pay for the cost of the resident's care, *see* MD. CODE ANN., HEALTH-GEN. § 19-344(c)(4), and then permits the creditor to petition a circuit court for an order requiring a resident to pay for care using those funds. Here, the MMAP determined that the Transamerica Account, a retirement account generally exempt under the Exemption Provision, was available to pay for the Debtor's Care. *See* ECF No. 12 at 42. Thus, the Payment Provision would be meaningless if the Creditor could not then petition the appropriate circuit court for an order requiring the Debtor to pay for her care using the identified funds.[5]

Accordingly, although the Transamerica Account is generally exempt from the claims of the Debtor's creditors pursuant to the Exemption Provision, the exemption does not apply to the

---

[5] The Debtor appears to contend that the opposite of the Court's conclusion is true—that the Exemption Provision is an exception to the Payment Provision. *See* ECF No. 11 at 8–9. But, as the Bankruptcy Court correctly noted, the Payment Provision only makes sense as an exception because there would be no need for a new procedure by which creditors could collect funds identified by the MMAP if those funds were already non-exempt. Thus, it must be that the Exemption Provision generally exempts the Transamerica Account, but the Payment Provision provides an exception by which the Creditor can petition the appropriate circuit court for an order requiring the Debtor to pay for her care using funds from that Account.

Creditor's claim pursuant to the Payment Provision because the Transamerica Account was specifically identified by the MMAP as an available source of funds to pay for the Debtor's care. Thus, the Bankruptcy Court's decision is affirmed and the Creditor's partial objection is sustained to the extent that the Creditor obtains the appropriate order from the state court.

### IV.     CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court is affirmed. A separate Order shall issue.

Date: <u>July     20, 2020</u>                                  ___/s/_____
                                                                                GEORGE J. HAZEL
                                                                                United States District Judge